IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | | |
|---|---|---|
| ARKADY AGINSKY, an individual, <br> SHARLOTA AGINSKY, an individual, | ) <br> ) <br> ) | |
| Third-Party Plaintiffs, | ) <br> ) | Case No. 05-291-KI |
| vs. | ) <br> ) | OPINION AND ORDER |
| FARMERS INSURANCE EXCHANGE, <br> an entity of unknown type, | ) <br> ) <br> ) | |
| Third-Party Defendant. | ) | |

Paul Sheely
The Aldrich Law Office, P.C.
522 S. W. 5th Avenue, Suite 1230
Portland, Oregon 97204

    Attorney for Third-Party Plaintiffs

Francis J. Maloney
Nicholas L. Dazer
Bullivant Houser Bailey P.C.
300 Pioneer Tower
888 S. W. Fifth Avenue
Portland, Oregon 97204-2089

    Attorney for Third-Party Defendant

Page 1 - OPINION AND ORDER

KING, Judge:

Plaintiffs Arkady Aginsky and Sharlota Aginsky[1] claim defendant Farmers Insurance Exchange ("Farmers") breached an insurance contract. Before me is Farmers' Motion for Summary Judgment (#8). For the following reasons, I grant Farmers' motion for summary judgment.

## BACKGROUND

On November 27, 1996, Farmers issued a property insurance policy to cover an apartment building owned by the plaintiffs. At the time the policy was issued, the apartment had in place a permanent roof. In early 2003, plaintiffs decided to re-roof one of their three apartment buildings and, in February 2003, plaintiffs entered into a contract with a roofing contractor, Executive Construction, to perform that work.

Executive completely removed the roof of the entire apartment building in late February 2003. With the roof completely removed, the project came to a standstill because, according to Mike Hettrick of Executive, the City had "red tagged the project because of concerns it had with structural problems with the building." Plaintiffs' Response to Concise Statement of Facts, No. 3. Executive and plaintiffs were stalled because they did not have a plan as to how to proceed with the repair or an agreement as to a contract price for the work. With the project at a standstill, Executive initially laid tarps flat on the roof and "burmed up" the tarps to prevent water from entering the building. According to Hettrick, at that point no water had entered the building. Executive then returned to the project and constructed a temporary roof structure on the Aginskys' building. Executive installed walls and a ridge and a joisting system in the form of

---

[1]The Notice of Removal misspells plaintiffs' last name as Aginksy.

a pitched roof to run the water to the outside of the building. The original flat-tarped system was also left in place.

In March 2003, due to high winds, rain water penetrated the temporary structure and the flat tarp and entered the building. Plaintiffs filed a claim with Farmers for the damage caused by the rain water. Farmers had a water damage repair contractor perform initial repairs. On April 21, 2003, Farmers sent a letter to plaintiffs denying coverage of the claim based on the same limitations now asserted in this Motion.

In September 2003, Farmers initiated a lawsuit against Executive to recover the money it paid to the water damage repair contractor. In its complaint, Farmers alleged it had insured plaintiffs, that plaintiffs made a claim under the policy with Farmers, and that Farmers "was obligated to pay and did pay insurance proceeds in the amount of $24,624 for emergency repair of the damages as was necessary." Plaintiffs' Additional Concise Statement of Facts, No. 3. Executive paid Farmers $15,500 in settlement.

Executive filed a breach of contract action against plaintiffs and other parties. Plaintiffs in turn filed a third-party complaint against Farmers based upon Farmers' denial of coverage. Among other claims, plaintiffs counterclaimed against Executive on the grounds that Executive performed its work negligently and not in a reasonably workmanlike manner.

On November 12, 2004, Farmers filed a summary judgment motion. The motion was argued before Honorable Judge Janice Wilson on December 10, 2004. Judge Wilson denied the motion from the bench. Plaintiffs submitted a proposed order on summary judgment on February 22, 2005. Plaintiffs settled all claims against Executive for $105,000 for the damage caused by Executive's negligent workmanship. Executive and the other original defendants were dismissed from this litigation on February 23, 2005 and the only claim that remains is plaintiffs' third-party

claim against Farmers. This lawsuit was removed to federal court on March 2, 2005 based upon diversity jurisdiction before the order on summary judgment was signed.

The insurance contract states in relevant part:

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM**

A.   Coverage

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

    1.   Covered Property

Covered Property, as used in this Coverage Part, means the type of property described in this Section **A.1.**, and limited in **A.2.**, Property Not Covered, if a Limit of Insurance is shown in the Declarations for that type of property.

        a.   Building, meaning the building or structure described in the Declarations, including:
. . .

            (5)   If not covered by other insurance:
. . .

                (b)   Materials, equipment, supplies and temporary structures, on or within 100 feet of the described premises, used for making additions, alterations or repairs to the building or structure.

**CAUSES OF LOSS SPECIAL FORM**

A.   **Covered Causes of Loss**

When Special is shown in the Declarations, Covered Causes of Loss means Risks Of Direct Physical Loss unless the loss is:

    1.   Excluded in Section **B.**, Exclusions; or
    2.   Limited in Section **C.**, Limitations;

   that follow.

**B.  Exclusions**

. . .

3. We will not pay for loss or damage caused by or resulting from any of the following, **3.a.** through **3.c.**  But if an excluded cause of loss that is listed in **3.a.** through **3.c.** results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

    . . .

    c. Faulty, inadequate or defective:

        . . .

        (2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
        (3) Materials used in repair, construction, renovation or remodeling; or

        . . .

**C.  Limitations**

The following limitations apply to all policy forms and endorsements, unless otherwise stated.

1. We will not pay for loss of or damage to property, as described and limited in this section.  In addition, we will not pay for any loss that is a consequence of loss or damage as described and limited in this section.

    . . .

    c. The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

        (1) The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or
        (2) The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

Aff. of Paul Sheely in Support of Plaintiffs' Opposition to Defendant Farmers' Motion for Summary Judgment ("Sheely Aff."), Ex. 2.

## LEGAL STANDARDS

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). The initial burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the evidence is viewed in the light most favorable to the nonmoving party. Universal Health Services, Inc. v. Thompson, 363 F.3d 1013, 1019 (9th Cir. 2004).

## DISCUSSION

I.  Summary Judgment in State Court

As an initial matter, plaintiffs argue that this court should give deference to the Circuit Court's denial of Farmers' motion for summary judgment, and they assert that Farmers' motion before the Circuit Court was identical to this one.

In the Ninth Circuit the court has the power to grant summary judgment even if the state court previously denied the same motion. The federal court may "within its discretion and for 'cogent' reasons" grant summary judgment despite an earlier denial in state court." Preaseau v. Prudential Ins. Co. of America, 591 F.2d 74, 80 (9th Cir. 1979).

The Circuit Court judge held that there was an issue of fact precluding summary judgment as to whether a reasonable person would conclude that the temporary structure could be considered a roof, among other questions of fact.

Page 6 - OPINION AND ORDER

In Oregon, the interpretation of an insurance policy is a matter of law. Hoffman Construction Co. v. Fred S. James & Co., 313 Or. 464, 469, 836 P.2d 703 (1992). The court's first task, therefore, is to determine the intention of the parties as to disputed terms in the insurance policy. The interpretation of an insurance policy only becomes one of fact when the term is ambiguous, or when "technical words, local phrases, or terms of art are used." Farmers Ins. Exch. v. Crutchfield, 200 Or. App. 146, 153, 113 P.3d 972 (2005). As I discuss below, because I do not find the term "roof" to be ambiguous, I do not believe that there are any issues of fact for resolution. For that reason, and since I am the judge that would oversee any necessary trial, I consider Farmers' motion for summary judgment despite the earlier denial of the motion.

II. Meaning of "Roof"

Farmers contends that plaintiffs' claim is for damage to the interior of the building as a result of rain water entering through the roof area, in spite of the tarp structure intended to protect the building in lieu of a roof. Farmers' insurance policy provides that Farmers will not pay for damage to the interior of any building or structure caused by rain unless the building or structure first sustains damage by a "Covered Cause of Loss to its *roof* or walls." Sheely Aff., Ex. 2 at 8 of 8, ¶ C.1.c.(1) (emphasis added).

As I indicated above, under Oregon law, the interpretation of the insurance policy is a matter of law. Hoffman Construction, 313 Or. at 469, 836 P.2d 703. The court must determine the intention of the parties by examining the terms and conditions of the policy. Id. If the policy contains undefined terms, the plain meaning of the terms should be used. If there is more than one plausible interpretation of the disputed term, the term must be examined considering the context in which it is used, and the policy as a whole. Id. at 470. If two plausible interpretations

Page 7 - OPINION AND ORDER

are reasonable after employing this analysis, the policy must be construed against the drafter. Id. at 470-71.

According to Farmers, a majority of jurisdictions have found that a tarp or temporary cover is not a "roof." In Diep v. California Fair Plan Ass'n, 19 Cal. Rptr. 2d 591 (Cal. Ct. App. 1993), the issue was whether plastic sheeting used to cover an exposed building top constituted a "roof." The court referred to dictionary definitions and determined that,

> [A] roof is commonly considered to be a permanent part of the structure it covers. "Roof" is not an ambiguous or vague word. The plastic sheeting was used here because part of the roof had been removed. The breach in the roof was not caused by wind or hail, but by the workmen who removed that portion of the roof needing repair.

Diep, 19 Cal. Rptr. 2d at 593. The policy limitation was almost identical to the language at issue here.

Farmers points to two cases with similar outcomes. In Camden Fire Ins. Ass'n v. New Buena Vista Hotel Co., 24 So. 2d 848 (Miss. 1946), during repair of a roof, a rainstorm caused damage to the interior of the building, despite the workmen applying roofing felt to the exposed area. The policy contained similar language. The court found that felt roofing materials did not constitute a "roof" because,

> [A] reasonably prudent householder would [not] consider it, if left in that condition for a month or months, or longer, as adequate against all risks of wind and rain which could be reasonably anticipated as likely to happen according to the general and recurrent experiences of the past–but not including any extraordinary or unprecedented eventuality.

Camden, 24 So.2d at 850.

Finally, in New Hampshire Ins. Co. v. Carter, 359 So. 2d 52 (Fla. Dist. Ct. App. 1978), a rainstorm caused damage during roof repairs even though the homeowner applied tar paper.

Page 8 - OPINION AND ORDER

Again, in interpreting similar policy language, the court held that the losses occurred because the homeowner removed the roof, not because of damage to the roof by wind or hail.

Here, according to Farmers, the plain language of the policy covers only losses resulting from damage to the roof. Plaintiffs' roof was deliberately removed, and the temporary structure does not constitute a roof. Indeed, plaintiffs' expert referred to the tarp as a "temporary roof covering."

Plaintiffs approach the question in a different way. They first contend that the temporary structure covering the top of the building is "covered property." The insurance policy states, "We will pay for direct physical loss of or damage to Covered Property . . ." and defines covered property to include "[m]aterials, equipment, supplies and *temporary structures*, on or within 100 feet of the described premises, used for making additions, alterations or repairs to the building or structure." Sheely Aff., Ex. 2 at 4 of 8, ¶ A.1.a.(5)(b) (emphasis added). According to plaintiffs, this language means that the parties anticipated coverage would continue while alterations or repairs to the building occurred.

Plaintiffs rely on Homestead Fire Ins. Co. v. DeWitt, 245 P.2d 92 (Okla. 1952). In that case, the court construed a builder's risk policy covering the interior of a school while the contractor constructed an addition. The contractor tore off a portion of the roof from the existing building in order to connect it to the new building, and temporarily covered the hole with a canvas. Wind blew the canvas off and rain damaged the interior of the building. The court quoted the provisions of the policy, which included a provision covering materials, equipment, supplies, and temporary structures like this policy does. The court concluded that it was within the contemplation of the parties to cover the risks incurred in connection with the construction of

Page 9 - OPINION AND ORDER

the addition. Furthermore, in response to an argument that the roof or walls of the building were not breached by the wind, the court stated,

> But it appears from the stipulation of fact that the opening in the roof was necessarily made in order that the roofs of the two buildings might properly be tied together, and that this opening was covered by a temporary roof of canvas which plaintiffs, as contractors, evidently considered adequate. . . .The fact that the opening was adequately covered by canvas brought it within the provisions of the wind storm clause, since except for the action of the wind the opening was adequately closed.

Homestead, 245 P.2d at 94-95.

Plaintiffs also refer to Victory Peach Group, Inc. v. Greater New York Mutual Ins. Co., 707 A.2d 1383 (N.J. Super. Ct. App. Div. 1998). In that case, workmen placed three tarps over unfinished repairs to the roof of a hotel building. The workmen were not replacing the roof, but rather were creating trenches in the roof to assist in drainage. A rainstorm ripped off the tarps and shingles securing the tarps. The court found that a similar limitation did not apply because the roof sustained damage by a covered cause of loss–damage to the repairs.

Finally, plaintiffs argue that at the very least the use of the term "roof" is ambiguous. The policy does not require the roof to be permanent. The policy anticipates the use of a structure during repairs to the roof, and since the structure was built to function as the roof temporarily, the policy is at least ambiguous about whether it covers losses caused by damage to the temporary structure.

I agree with Farmers that the definition for "covered property" to include temporary structures is irrelevant. Assuming without deciding that the tarp is a "temporary structure" and therefore is a "building" under the policy, the policy only covers losses if the "building" first sustains damage to its roof or walls. Plaintiff may be correct that including temporary structures in the definition of "building" implies that the parties anticipated coverage would continue while

Page 10 - OPINION AND ORDER

alterations or repairs to the building occurred. However, the parties also agreed that coverage is limited to those times when the building or structure first incurs damage to its roof or walls by a Covered Cause of Loss. Plaintiffs' reading of the limitation eliminates the requirement that the building or structure incur damage to its roof or walls by a specified means.

The question then becomes what is the plain meaning of "roof," considering the intention of the parties, and whether a temporary structure acting as a temporary roof constitutes a "roof" as contemplated by the policy. I am persuaded by the authority cited by Farmers, and in particular by Diep. A "roof" is a permanent structure, according to its commonly understood meaning, and is not an ambiguous term. A temporary structure consisting of wooden framing and a plastic tarp would not be considered a "roof" by any reasonable person. The policy language anticipates coverage of a completed, permanent roof, not one in the process of repair and temporarily covered awaiting completion of the repairs.

The two cases on which plaintiffs rely are distinguishable. In Homestead, the court focused on the fact that the policy specifically covered risks during construction; the opening of the roof was a risk intended and contemplated by the contracting parties. The court's reference to the policy language covering temporary structures was simply intended to buttress its conclusion that the parties anticipated coverage for damage during construction. Furthermore, the court's response to defendant's argument that the temporary tarp was not a roof was a mere afterthought. The court did not construe the term "roof" and instead considered the issue from the perspective of the contractor and whether the canvas was an adequate closure of the hole.

As for Victory Peach, the roof had not been removed; it had itself sustained damage by a covered cause of loss.

Since I find that plaintiffs' losses were not caused by damage to the roof, I need not reach Farmers' alternative argument that the policy excludes coverage for losses resulting from faulty workmanship or materials.

III.   Farmers' Alleged Admission

Plaintiffs assert Farmers should be bound by its allegations against Executive that Farmers was obligated to pay insurance proceeds for "emergency repairs as was necessary." Plaintiff's Ex. 11, ¶ 12.  The policy does not distinguish between emergency repairs and other kinds of repairs.  Plaintiffs contend that Farmers has been acting inconsistently by denying coverage and then obtaining reimbursement in the amount of $15,500 from Executive for the repairs Farmers paid for.  Farmers does not respond to this argument.

I do not consider Farmers allegation in one of its three claims against Executive to be a judicial admission.  The rule that an "admission of fact in a pleading is a judicial admission" applies only if the admission is made in the same judicial proceeding.  Kalgaard v. Lindo Mar Adventure Club, Ltd., 147 Or. App. 61, 67, 934 P.2d 637 (1997).  The factual statement in a pleading in another judicial proceeding is "some evidence" in this proceeding of a statement against interest.  Id.

The meaning of the purported statement against interest is unclear.  The fact that Farmers made payments for emergency repairs is not necessarily indicative of Farmers' interpretation of its policy that the temporary structure is not a roof.  The allegation was made to support one of three claims filed against Executive.  Furthermore, in light of Farmers' otherwise consistent position that the temporary structure did not constitute a roof, I am not persuaded that Farmers should be bound by the allegation in this proceeding.

## CONCLUSION

Based on the foregoing, I grant Farmers' Motion for Summary Judgment (#8).

IT IS SO ORDERED.

Dated this <u>  21st  </u> day of December, 2005.

<u>   /s/ Garr M. King              </u>
Garr M. King
United States District Judge